# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JUSTIN GRIMSRUD, | DOCKET NUMBERS |
| Appellant, | NY-0752-13-0073-X-1 |
| | NY-0752-13-0073-C-1 |
| v. | |
| DEPARTMENT OF | |
| TRANSPORTATION, | DATE: June 28, 2016 |
| Agency. | |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jonathan Bell, Esquire, and Mordy Yankovich, Esquire, Carle Place, New York, for the appellant.

Christian Lewerenz, Esquire, Jamaica, New York, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1 This case is before the Board on the appellant's petition to enforce the settlement agreement that resolved his 2013 removal appeal.[2] On May 15, 2015,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the Board ordered the agency to submit evidence and a narrative statement showing that it properly corrected the appellant's Thrift Savings Plan (TSP) account for all employee and agency automatic and matching contributions that the appellant would have made and received but for the removal action. *Grimsrud v. Department of Transportation*, MSPB Docket No. NY-0752-13-0073-C-1, Order, ¶ 13 (May 15, 2015); Compliance Referral File (CRF), Tab 1. The agency filed evidence in response to that order, CRF, Tab 2, and the appellant filed a reply asserting that the agency remained in noncompliance, CRF, Tab 3.

¶2 On October 27, 2015, the Board issued a show cause order directing the agency to file additional evidence. CRF, Tab 5. In response, the agency produced affidavits from individuals involved in processing corrections to the appellant's TSP account as well as the data records submitted to the Federal Retirement Thrift Investment Board (FRTIB), which administers the TSP. CRF, Tab 7. The appellant, in reply, again asserts that his TSP account has not been fully restored. CRF, Tab 8. Specifically, the appellant states that the agency, after erroneously designating his TSP funds as "traditional," rather than "Roth," further erred in its attempt to correct that error. *Id*. at 4, 7.

¶3 The TSP was established by the Federal Employees' Retirement System Act of 1986 (FERSA), Pub. L. No. 99-335, 100 Stat. 514 (codified as amended largely at 5 U.S.C. §§ 8351 and 8401-8479), and has been implemented by the FRTIB through regulations at 5 C.F.R. part 1600. As discussed in the Board's May 15, 2015 Order, the agency was required to comply with the FERSA and with the applicable TSP regulations in issuing the appellant's back pay. *See* 5 C.F.R.

---

[2] The agency removed the appellant for the second time on June 26, 2014. In an initial decision issued on February 3, 2016, the administrative judge affirmed the agency's removal action. *Grimsrud v. Department of Transportation*, MSPB Docket No. NY-0752-14-0340-I-1, Initial Decision (Feb. 3, 2016). The appellant's petition for review of the initial decision is pending with the Board.

§ 550.805(h) (agencies must correct errors that affect an employee's TSP account consistent with regulations prescribed by the FRTIB).  There is no dispute that the agency made a series of errors in attempting to restore the appellant's TSP account.  *See, e.g.*, CRF, Tab 7 at 12-14 (affidavit of B.A., Benefits Processing Branch Chief),  Tab 8 at 7-8 (appellant's timeline).

¶4    The agency was required to implement the appellant's TSP elections by deducting his employee contributions from the back pay award and transferring those funds to the FRTIB.  5 C.F.R. § 1605.13(c).  As discussed in the Board's May 15, 2015 Order, the agency did not withhold the appellant's TSP contributions from his back pay due to an administrative error.  *Grimsrud*, M.S.P.B. Docket No. NY-0752-13-0073-C-1, Order, ¶ 9; CRF, Tab 1 at 9.  To remedy this, the agency decided that "[t]he only means to make the TSP payments for the employee was to issue additional salary above and beyond his settlement amount."  CRF, Tab 7 at 7 (affidavit of S.J., Management and Program Analyst).[3]

¶5    The agency then deposited these funds into a traditional TSP account, using the G Fund (Government Securities).  *Id.* at 10 (affidavit of L.C., Supervisory Benefits Specialist).  In doing so, the agency made two errors.  First, the funds should have been contributed to the appellant's Roth TSP account rather than a traditional account.  *Id.* at 12 (affidavit of B.A.).  Second, the funds should have been invested according to the appellant's contribution allocation rather than the G Fund.  *Id*; *see* 5 C.F.R. § 1605.13(a)(3).  To correct the first error, the agency redesignated the funds from a traditional TSP account to a Roth TSP account.  CRF, Tab 7 at 10 (affidavit of L.C.).  *See* 5 C.F.R. § 1605.17 (redesignation and recharacterization).  The agency also removed the funds deposited into the G Fund and resubmitted the funds using the appellant's allocations.  CRF, Tab 7 at 12 (affidavit of B.A.).  In doing so, however, the agency used the

---

[3] The appellant stated that he was willing to remit pay for this purpose and was waiting on instructions from the agency on how to do so.  CRF, Tab 3 at 2.

incorrect effective date on two transactions; subsequently, the agency removed these funds and resubmitted them using the correct dates. *Id*. at 12-13.[4]

¶6    The appellant asserts that the agency's redesignation of his TSP account from traditional to Roth was "done completely improperly." CRF, Tab 8 at 7. He states that "[o]nly the initial transactions should have been done in terms of Dollars by the agency." *Id*. He contends that all subsequent corrections should have involved shares, rather than dollars. *Id*. He states that, "So, for this transaction to be accurate, the number of Shares bought for My Contributions and its associated 'breakage' on the transactions posted to my account on 7/21/15 should have been transferred from Traditional Funds to ROTH Funds." *Id*. The agency responds that its payroll office transmits all transactions, including corrections, to the FRTIB in dollars, based on the contributions that are deducted from basic pay. CRF, Tab 7 at 11. The agency's Benefits Processing Branch Chief avers that her office has "no visibility or understanding of how TSP shares are purchased" and that she contacted the FRTIB to find a point of contact to explain the appellant's shares to him. *Id*. at 13.

¶7    According to FRTIB regulations, when pay has been contributed to a participant's traditional balance when it should have been contributed to his Roth balance, the agency must promptly submit a redesignation record. 5 C.F.R. § 1605.17(b). That is exactly what the agency did here. CRF, Tab 7 at 22-23 (certification of redesignation of records and journal voucher). Once the agency submitted the redesignation records, the FRTIB was responsible for treating "the

[4] There were other errors that the agency states—and the appellant does not dispute—have been corrected. The FRTIB rejected a $674 contribution for October 15, 2013, because the payment would have caused the appellant to exceed the Internal Revenue Service contribution limit for 2013. CRF, Tab 7 at 10, 12 (affidavits of L.C. and B.A.); CRF, Tab 8 at 7 (appellant's timeline). *See* 5 C.F.R. § 1600.22 (maximum employee contributions). The agency therefore redeposited $650 for that date and refunded the appellant $24. CRF, Tab 8 at 7. In addition, the agency failed to make a matching contribution for pay period 26 of 2012; the agency states that this was subsequently corrected and the deposit was made. CRF, Tab 7 at 12, Tab 8 at 8.

erroneously submitted contribution (and associated positive earnings) as if the contribution had been made to the correct balance on the date that it was contributed to the wrong balance." 5 C.F.R. § 1605.17(c)(1). The FRTIB was also responsible for changing the tax characterization of the erroneously characterized contribution. 5 C.F.R. § 1605.17(c)(2).

¶8        Similarly, once the agency certified the transfer of funds, CRF, Tab 7 at 18, 22-23, 25-26 (Form TSP-2-G), the FRTIB was responsible for calculating "breakage," i.e., "the loss incurred or the gain realized on makeup or late contributions." 5 C.F.R. § 1605.1.[5] The regulations make clear that the FRTIB calculates breakage on late contributions and makeup agency contributions. 5 C.F.R. § 1605.2(a). The FRTIB, not the employing agency, must determine the number of shares of applicable investment funds the participant would have received had the contributions been made on time. 5 C.F.R. § 1605.2(b)(1)(ii). The regulations further provide that there is no "breakage" associated with the redesignation of a TSP account from traditional to Roth. 5 C.F.R. § 1605.17(c)(4).

¶9        Therefore, based on the agency's evidence and the applicable regulations, we conclude that the agency complied with its obligations in restoring and correcting the appellant's TSP account. The continued management of the appellant's TSP account is a matter between the appellant and the FRTIB. *See Wilkes v. Department of Veterans Affairs*, No. 2016-1220, 2016 WL 1394260, at *2 n.6 (Fed. Cir. Apr. 8, 2016) (finding that the employing agency does not manage an employee's TSP contributions). Accordingly, we find the agency in compliance and dismiss the petition for enforcement.

---

[5] Breakage is further defined as "the difference between the value of the shares of the applicable investment fund(s) that would have been purchased had the contribution been made" on the date on which the contribution occurred "and the value of the shares of the same investment fund(s) on the date the contribution is posted to the account." 5 C.F.R. § 1605.1.

¶10     This is the final decision of the Merit Systems Protection Board in this compliance proceeding.     Title 5 of the Code of Federal Regulations, section 1201.183(c)(1) (5 C.F.R. § 1201.183(c)(1)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:               _____
                             Jennifer Everling
                             Acting Clerk of the Board

Washington, D.C.